UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No.: 2:25-cr-01174-RMG |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| **JAMES BENJAMIN GOSNELL, JR.** | ) | |
| | ) | |

---

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS AND REQUEST FOR A *FRANKS* HEARING

The United States of America, by and through its undersigned counsel, hereby respectfully responds in opposition to Defendant James Benjamin Gosnell, Jr.'s Motion to Suppress and Request for a *Franks* hearing (Dkt. No. 71). Gosnell challenges Homeland Security Investigations' ("HSI") search of his residence conducted pursuant to a warrant issued by a United States magistrate judge—which ultimately led to the discovery of child sexual abuse materials. The warrant was supported by a 36-page affidavit that provided sufficient probable cause to search the property. In any event, HSI reasonably relied on the federal magistrate judge's authorization to search. And Gosnell has failed to make the "substantial preliminary showing" necessary for a hearing under *Franks v. Delaware*, 438 U.S. 154, 156 (1978). Therefore, the Motion and request for a *Franks* hearing should be denied.

### I.     PROCEDURAL BACKGROUND

On September 16, 2025, HSI Agents executed a federal search warrant at Gosnell's residence, during which time Gosnell confessed to possessing Child Sexual Abuse Material[1]

---

[1] For the purposes of this Response, the term Child Sexual Abuse Material, or "CSAM," will be used interchangeably with the statutory term: "Child Pornography." Any time the term

("CSAM"). That day, United States Magistrate Judge Molly H. Cherry authorized a Complaint, charging Gosnell with Possession of Child Pornography, in violation of 18 U.S.C. § 2252A, and he was arrested. Gosnell waived his right to a detention hearing, and he remains detained. On October 14, 2025, a federal grand jury returned an Indictment against James Gosnell and his co-conspirator, John Thorpe. The Indictment charged Gosnell with counts of Possession, Distribution, and Receipt, of Child Pornography, as well as Conspiracy to Receive and Distribute Child Pornography, in violation 18 U.S.C. § 2252A. Dkt. 25.

## II.     **FACTUAL BACKGROUND**

In December 2024, PayPal, Inc.[2] filed a National Center for Missing and Exploited Children ("NCMEC") CyberTip identifying concerns with transactions related to certain accounts. The CyberTip flagged numerous PayPal accounts that were communicating with and making payments to a known CSAM vendor ████████████████████████ hereinafter referred to as "the CSAM Vendor," had been previously convicted in ████████████ for child pornography offenses. ███████████████████████████████████████

███████████████████████ ██████████████████████████████████

███████████████████████████████████████████████

---

"CSAM" appears, the Government is indicating that such material meets the statutory definition of "Child Pornography." The Government, like the Fourth Circuit, has elected to refer to this "content as 'child sexual abuse material' to reflect more accurately the abusive and exploitative nature of child pornography." *United States v. Kuehner*, 126 F.4th 319, 322 (4th Cir.), *cert denied*, 145 S. Ct. 2762 (2025).

[2] PayPal is a financial technology company that facilitates peer to peer online money transfers.

[3] ███████████████████████████████████████████ ████████████████████████████████████

[4] Telegram is a cloud-based messaging app that allows users to encrypted send text messages, voice messages, photos, videos, and files.

███████████████████████████████████████████████

████████████████████████████

The payments between CSAM purchasers and the CSAM Vendor's accounts sometimes included notes associated with the transactions or other communications that further confirmed the nature of the content the CSAM Vendor was selling. One of these communications advertised "Matt Estes" style videos,[5] while another advertised a large number of files and "hardcore dads."

To further ascertain the purpose of those payments, HSI Agents obtained information about identifiable PayPal account holders who had been investigated or prosecuted by law enforcement across the country for violations of CSAM laws.



---

[5] Matthew Estes was convicted in the Eastern District of Tennessee for Production of Child Pornography and sentenced to 720 months imprisonment for his production and distribution of a video of Estes raping a 16-month-old child. He posted this video to a discussion board titled "toddler being pummeled without any regard to his well-being."

[6] The typographical and grammatical errors in quoted language reflect errors in the original communications.





Identification of James Gosnell

Investigators determined that two of the PayPal accounts that paid the CSAM Vendor belonged to Gosnell. The CyberTip identified PayPal account ending in 9731 as having sent two payments to the CSAM Vendor on November 4, 2024, with the transaction note "vids." The PayPal account ending in 9731 was created that same day, November 4, 2024, and it conducted no other transactions. Federal Agents found correspondence from the CSAM Vendor's PayPal account to the PayPal account ending in 9731 on November 5, 2024 regarding refund processing. On December 20, 2024, the account placed a hold on both transactions, reporting that they were unauthorized.[7]

On November 5, 2024, the CSAM Vendor's PayPal account sent a message to Gosnell's PayPal account ending in 9731: "Hi i have finally sorted refunds but because you sent 2 identical payments PayPal have delayed it by 72hrs so will just havr [sic] to wait. least they are on the way back now :)"

Federal Agents were able to determine that the PayPal account ending in 9731 listed a primary street address of ███████████████████████ the email address ████████████████ and the phone number ████████████, all of which were found to belong to James Gosnell. The PayPal account ending in 9731 was created, and the transactions were conducted, from IP address ███████████. The IP address resolved back to the net range of AT&T, with subscriber information that the account was associated with James Gosnell, with a service

---

[7] It is understood that individuals who purchase CSAM online often are purchasing login credentials to a file sharing site. As a result, CSAM vendors have little recourse in instances where the CSAM buyer reports the transaction as fraudulent, even if the exchange of the login information actually occurred. It has also been reported that collectors of CSAM sometimes reverse payments made to CSAM vendors if the product the collector receives is unsatisfactory.

and billing address of ███████████████████████, the email address ███████████████████, and the phone number ███████████████.

Investigators subsequently located an additional PayPal account belonging to Gosnell. This PayPal account, ending in 4954, was also used to conduct three transactions with CSAM Vendor on November 4, 2024, shortly after the two transactions from the PayPal account ending in 9731. This account sent three payments to the CSAM Vendor with the subject "Games." All three of the transactions had the status "Denied_Cancelled."[8]  Federal Agents were able to determine that the PayPal account ending in 4954 was created on October 11, 2021. It listed a primary street address of ████████████████████, the email address ██████████████████ and no phone number, all of which were found to belong to James Gosnell. The account is sourced from the same credit/debit card number as the Gosnell PayPal account ending in 9731.

In summary, investigators received a CyberTip identifying PayPal accounts that had sent payments to a known CSAM Vendor. Agents further confirmed the nature and purpose of these payments by obtaining communications and transactions notes between the CSAM Vendor and his customers. Agents thereafter identified individuals who had transacted with the CSAM Vendor and were investigated or prosecuted by law enforcement for CSAM-related offenses, providing additional support for the probable purpose of PayPal transactions to the CSAM Vendor. Two of the accounts transacting with the CSAM Vendor belonged to Gosnell—linked by his home address, phone number, email address, IP address, and credit card. Using his two PayPal accounts, Gosnell sent 5 payments to the CSAM Vendor on November 4, 2024 for "vids" and "Games."

---

[8] Transactions can be denied for a variety of reasons, including but not limited to, because the source financial institution declines a transaction, an account is limited while under a review by PayPal, or because details have not been confirmed.

7

### III.  ARGUMENT

**1.  The search was constitutionally valid.**

**A.    The warrant's affidavit sufficiently established probable cause to search Gosnell's residence for CSAM.**

This Court should deny Gosnell's suppression motion because the magistrate judge had more than "a substantial basis for concluding that a search would uncover evidence of wrongdoing." *United States v. Krueger*, 145 F.4th 460, 464 (4th Cir. 2025) (internal quotation marks and citation omitted).  The evidence in the warrant's affidavit easily satisfied probable cause's "low bar . . . ." *Nazario v. Gutierrez*, 103 F.4th 213, 229 (4th Cir. 2024).

Where, as here, law enforcement "seek[s] to perform a search for evidence of wrongdoing, they generally must obtain a warrant." *United States v. Glass*, 160 F.4th 563, 568 (4th Cir. 2025) (internal quotation marks and citation omitted).  "A warrant is constitutionally sound when issued by a neutral magistrate and supported by probable cause." *United States v. Montieth*, 662 F.3d 660, 664 (4th Cir. 2011) (internal citations omitted).  Indeed, the Fourth Amendment requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. CONST. amend. IV.

"[T]he Supreme Court has long conveyed 'a strong preference for warrants.'" *Glass*, 160 F.4th at 568 (quoting *United States v. Leon*, 468 U.S. 897, 914 (1984)).  "By natural extension, it has repeatedly counseled against overly scrutinizing the *affidavits* supporting warrants." *Glass*, 160 F.4th at 568 (emphasis in original) (internal citation omitted).  The Fourth Circuit, too, has instructed that courts "refrain from nitpicking warrant affidavits with clarity afforded only by hindsight and the absence of an urgent, ongoing criminal investigation." *Glass*, 160 F.4th at 568.

8

When presented with a warrant application, the magistrate judge must determine whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). As explained above, this "probable cause bar is a low one . . . ." *Moretti v. Thorsdottir*, 157 F.4th 352, 364 (4th Cir. 2025). *See also District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) ("Probable cause is not a high bar.") (internal quotation marks and citation omitted). "It is well-established that reasonable law enforcement officers are not required to exhaust every potentially exculpatory lead or resolve every doubt about a suspect's guilt before probable cause is established." *Wadkins v. Arnold*, 214 F.3d 535, 541 (4th Cir. 2000) (internal quotation marks, citations, and alteration omitted). Nor is law enforcement required to "know with perfect certainty that a crime has been committed[,]" *Moretti*, 157 F.4th at 360 (internal citation omitted), or "rule out a suspect's innocent explanation for suspicious facts[,]" *United States v. Bosyk*, 933 F.3d 319, 325 (4th Cir. 2019). "[P]robable cause requires only the probability, and not a prima facie showing, of criminal activity . . . ." *Id.* (internal quotation marks and citation omitted).

The standard of review for this probable-cause determination is "one of great deference." *United States v. Rodriguez*, No. 4:17-cr-01103-RBH-1, -3, 2018 WL 4259774, at *1 (D.S.C. Sept. 6, 2018), *aff'd*, 827 F. App'x 293 (4th Cir. 2020). "Consistent with the Supreme Court's long-held preference for warrants, [courts] must extend some grace to warrant affidavits." *Glass*, 160 F.4th at 565. The inquiry is limited "to whether there was a 'substantial basis for determining the existence of probable cause.'" *United States v. Montieth*, 662 F.3d 660, 664 (4th Cir. 2011) (quoting *Gates*, 462 U.S. at 239). In making this determination, the reviewing court must "consider only the facts presented in the warrant application." *Bosyk*, 933 F.3d at 325 (internal citation omitted).

Here, the warrant affidavit provided more than a substantial basis for the magistrate judge to find probable cause to believe that Gosnell "conducted transactions with a child pornography vendor" and that Gosnell is "in possession of child pornography on his electronic devices." Dkt. No. 71-2, ¶ 24, 32. First, there was a tip from PayPal that identified 171 accounts ("the suspected buyer PayPal accounts") that either sent or attempted to send money between July 19, 2023 and November 22, 2024 to a collection of 51 accounts that PayPal suspected were associated with a known CSAM Vendor, who was suspected of selling "Child Pornography[.]" Dkt. No. 71-2, ¶ 7. Specifically, PayPal submitted a tip to the National Center for Missing and Exploited Children that included "user provided notes associated with some of the transactions" that "were indicative of the sale of child pornography . . . ." *Id.* at ¶ 7(a). SA Tallio's affidavit listed two examples of these notes. *See id.* at ¶ 7(a)(i)-(ii). PayPal also observed messages exchanged with the CSAM Vendor's accounts that were "indicative of child pornography sale." *Id.* at ¶ 7(b). As with the notes, the warrant affidavit listed two examples of these messages, including one message that referred to "vids . . . ." *Id.* at ¶ 7(b)(i)-(ii). In addition, PayPal found "three instances where suspected buyer PayPal accounts appeared to be held by individuals with prior arrests or convictions for child sexual abuse or child pornography offenses." *Id.* at ¶ 7(c). The affidavit explained how, after reviewing the data from PayPal and law enforcement records regarding criminal history, three individuals were identified. *Id.* ¶ 7(c)(i)-(iii).

Second, law enforcement confirmed that the CSAM Vendor had previously been convicted of a sex offense in ████████████ and was a registered sex offender. *See id.* at ¶ 10. The affidavit discussed communication between law enforcement in the United States and law enforcement in ██████████████████████████████████████

10

██████████████████████████████████████████████████

████████████████ *Id.* at ¶ 10.

Third, PayPal provided law enforcement with the account information and transactional data for the CSAM Vendor's accounts and the suspected buyer PayPal accounts, and law enforcement identified 79 accounts with addresses in the United States. *See id.* at ¶ 9. With this information in hand, "[l]aw enforcement queried law enforcement databases in an attempt to identify criminal history records or other relevant information." *Id.* SA Tallio's affidavit listed 12 suspected buyer PayPal accounts with "relevant criminal histories[,]" including for "CSAM related offenses[,]" "CSAM distribution related offenses[,]" and "sexual abuse of a minor related offenses." *Id.* at ¶ 9(a)-(l). █████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████

Fourth, after receiving the tip, law enforcement identified international travel by individuals associated with the PayPal accounts identified in the tip, and Customs and Border Protection Officers and HSI Special Agents contacted four of the travelers. *Id.* at ¶ 20. ██████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████

Fifth, SA Tallio reviewed PayPal's tip "during the proactive review of investigative leads for subjects in HSI Charleston's area of responsibility" and identified a PayPal account with the name "James GOSNELL" that was a suspected buyer PayPal account (ending in 9731)  *Id.* at ¶ 8, 13.  The affidavit provided several details about this account, including when it was created (November 4, 2024), the account's primary street address (a location in Charleston), the IP address from which the account was created, and the account's transactions.  *Id.* at ¶ 14, 16.  Regarding the latter, there were only two transactions—both with the CSAM Vendor's account (ending in ███ both containing the "transaction note 'vids'", and both done on November 4, 2024 between 4:38 p.m. EST and 4:44 p.m. EST (during the timeframe when the CSAM Vendor's "accounts were accepting payments linked to the suspected sale and distribution of child pornography").  *Id.* at ¶ 16, 17.  The transactions were "for approximately $100 . . . ."  *Id.*  Over a month later, on December 20, 2024, there was a hold placed on both transactions, "reporting that it was unauthorized."  *Id.*  SA Tallio explained in his affidavit that, based on his "training, experience, and conversation with other law enforcement officers," individuals purchasing CSAM often purchase login credentials to a file sharing site, and CSAM buyers may report that a transaction was fraudulent, "even if the exchange of the login information actually occurred."  *Id.*  Moreover, SA Tallio stated that he was "aware of a report that collectors of child pornography sometimes reverse payments made to child pornography vendors if the product the collector receives is unsatisfactory."  *Id.*

Sixth, pursuant to a separate warrant issued on September 8, 2025—which Gosnell is not challenging[9]—law enforcement obtained messages, comments, and other transactions with the

---

[9] Gosnell is only challenging the warrant that the magistrate judge issued on September 15, 2025.  *See* Dkt. No. 71 at 2.

CSAM Vendor's PayPal accounts, including a message to the Gosnell account ending in 9731 and transactions with another Gosnell account ending in 4954. *Id.* at ¶ 22(a). As for the message, on November 5, 2024—the day after the transactions between the Gosnell account ending in 9731 and the CSAM Vendor account—the CSAM Vendor account sent the following message: "Hi i have finally sorted refunds but because you sent 2 identical payments PayPal have delayed it by 72hrs so will just have to wait. least they are on the way back now :)". *Id.* at ¶ 22(a). As for the transactions with the Gosnell account ending in 4954, this account "attempted three transactions with . . ." a CSAM Vendor account ending in ███ on November 4, 2024 between 5:32 p.m. EST and 5:34 p.m. EST for $50, $80, and $103.45. *Id.* at ¶ 22(d). That CSAM Vendor account had been previously identified in PayPal's tip, although the Gosnell account ending in 4954 had not been. *Id.* The three attempted transactions had the "subject 'Games'" and "the status 'Denied_Cancelled[,]'" which SA Tallio explained could be "for a variety of reasons, including but not limited to, because the source financial institution declines a transaction, an account is listed while under a review by PayPal, or because details have not been confirmed." *Id.* at ¶ 22(d)(i), n.11.

Finally, law enforcement determined that both Gosnell PayPal accounts listed the same primary street address and the same credit/debit card number. *See id.* at ¶¶ 18, 23. Databases determined that the IP address associated with the Gosnell PayPal account ending in 9731 was with AT&T. *Id.* at ¶ 18. AT&T provided subscriber information showing that this IP address is "associated with 'JAMES Gosnell' with service and billing addresses . . ." that matched the primary street address for the Gosnell account ending in 9731. *Id.* at ¶ 18.

This information provided ample probable cause for the magistrate to issue the search warrant. This was not a case of "simply handing over money . . ." to a vendor "sell[ing] a variety

of goods, only a subset of which is illegal[,]" despite Gosnell's assertion to the contrary.  Dkt. No. 71 at 8.  The affidavit provided "detailed and specific" information, *United States v. Ventresca*, 380 U.S. 102, 109 (1965), from which the magistrate judge could reasonably infer that (1) the CSAM Vendor sold CSAM, including "vids[,]" between July 19, 2023 and November 22, 2024 using PayPal, (2) Gosnell conducted two transactions on PayPal with the CSAM Vendor for "vids" during this period, and (3) Gosnell was in possession of CSAM that he received from these transactions, even though a "hold" was placed on both transactions over a month later.  Dkt. No. 71-2, ¶¶ 7(b)(ii), 16, 32.

Gosnell argues that there was no substantial basis for the magistrate judge to believe that Gosnell received CSAM from a "financial transaction[] which not only bore no indicia of being related to child pornography on its face but was being refunded."  Dkt. 71 at 8.  However, he ignores the fact that two of his transactions with the CSAM Vendor were labeled "vids[,]" Dkt. No. 71-2, ¶15, and that the CSAM Vendor's message with another PayPal account likewise referred to "vids[,]" specifically "vids . . ." of "dads [and] boys . . ." and "Matt Estes" style videos. Dkt. 71-2, ¶ 7(b)(ii).  He also ignores the fact that the CSAM Vendor's transactions had other messages and "user provided notes" that were "indicative of the sale of child pornography[,]" including "child pornography videos[,]" and one of the CSAM Vendor's buyers who was searched at the border had "numerous child pornography videos."  *Id.* at ¶¶ 7(a)-(b), 20(c).

As for the refund, Gosnell suggests that the only reason why the CSAM Vendor would refund Gosnell's money was if Gosnell "had not received any product or any product that could not be returned."  Dkt. No. 71 at 9.  But SA Tallio's affidavit explains why, "[b]ased on [his] training, experience, and conversation with other law enforcement officers," there could be another reason for a refund.  *See* Dkt. No. 71-2, ¶ 16 (noting that "collectors of child pornography

14

sometimes reverse payments made to child pornography vendors if the product the collector receives is unsatisfactory"). SA Tallio was not required to "know with perfect certainty that a crime ha[d] been committed[,]" *Moretti*, 157 F.4th at 360 (internal citation omitted), or "rule out a suspect's innocent explanation for suspicious facts[,]" *Bosyk*, 933 F.3d at 325 (4th Cir. 2019).

Further, Gosnell states that he is not aware of any case in the Fourth Circuit that presents "similar or analogous facts[,]" citing and distinguishing cases where search warrants were upheld and "the defendant was actually accessing, receiving, possessing and/or transmitting some form of illicit content." Dkt. No. 71 at 9. Probable cause for the issuance of a search warrant does not require proof that a suspect previously received, possessed, or transmitted CSAM. This would "demand[] more proof than is required to obtain a warrant." *Bosyk*, 933 F.3d at 327. Indeed, "[s]ection 2251(a) and (e) of Title 18 of the United States Code criminalize[s] [not only] production [but also] . . . *attempted* production of [CSAM] . . . ." *Kuehner*, 126 F.4th at 326 (emphasis added) (internal quotation marks and citation omitted).

The Fourth Circuit's "2019 decision in *United States v. Bosyk* is very instructive[,]" demonstrating how "[p]robable cause is not a high bar . . . ." *United States v. Sanders*, 107 F.4th 234, 250 (4th Cir. 2024) (internal citations omitted). In *Bosyk*, the Fourth Circuit upheld a search warrant of the defendant's house, concluding that there was "a fair probability that child pornography or evidence of attempts to access it would be found [there]." 933 F.3d 319, 330 (4th Cir. 2019). The "basic facts" were that "a link appeared on a secretive online message board" with "a message describing [the link's] contents unmistakably as child pornography" and containing "numerous thumbnail images depicting sexual molestation of a female toddler." *Id.* at 322. There was also an IP address associated with the defendant's house that had "accessed the link" that day. *Id.* The defendant argued that the government had "obtained its warrant based on a 'single click'

15

of a URL . . ." and that this was insufficient to establish probable cause. *Id.* at 325. The Fourth Circuit disagreed, even though there was no "direct evidence that [the defendant] had previously visited the [website] and viewed the incriminating description of the Link's contents . . . ." *Sanders*, 107 F.4th at 250 (citing *Bosyk*, 933 F.3d at 322). The Court explained that "the magistrate judge had a substantial basis for finding probable cause to search Bosyk's house given two factual allegations—first, the appearance . . . of a post unambiguously promoting a link containing child pornography videos, and second, an attempt to access that link on the same day by someone at Bosyk's address." *Bosyk*, 933 F.3d at 330.

In sum, SA Tallio's affidavit established probable cause to believe that Gosnell "conducted transactions with a child pornography vendor" and that Gosnell was "in possession of child pornography on his electronic devices." Dkt. No. 71-2, ¶¶ 24, 32. The search warrant relied on more than simply "a 'single click' of an internet link," like in *Bosyk*. *Id.* at 326. Here, the CSAM Vendor "unambiguously" promoted the sale of CSAM videos on his PayPal accounts, the CSAM Vendor transacted with more than a dozen individuals investigated and/or prosecuted for CSAM-related offenses, and Gosnell initiated five separate transactions with the CSAM Vendor's accounts, two of which were for "vids." *Bosyk*, 933 F.3d at 330. This provided "a substantial basis for concluding that a search would uncover evidence of wrongdoing . . . ." *Gates*, 462 U.S. at 236 (internal quotation marks and citation omitted).

## B.     The information in the affidavit was not stale.

Gosnell claims that the almost 11-month period between the transactions on November 4, 2024 and the search of his residence on September 16, 2025 rendered the information about those transactions "too stale to establish probable cause to search . . . ." Dkt. No. 71 at 11. However, Gosnell misunderstands the staleness inquiry and ignores precedent from courts in the Fourth

Circuit "sustain[ing] warrants issued many months, and even years, after the events that gave rise to probable cause." *Bosyk*, 933 F.3d at 331 (collecting cases).

It is well settled that "probable cause is time-specific, and that facts said to support probable cause must justify a finding of probable cause at th[e] time a warrant issues." *United States v. Krueger*, 145 F.4th 460, 465 (4th Cir. 2025) (internal quotation marks and citations omitted). "While time is a crucial element, . . . the existence of probable cause cannot be determined by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit." *United States v. Ebert*, 61 F.4th 394, 401 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 149 (2023) (internal quotation marks and citations omitted). As with any probable-cause inquiry, courts "must look to all the facts and circumstances of the case," and this includes "the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized." *United States v. McCall*, 740 F.2d 1331, 1336 (4th Cir. 1984).

However, in cases involving CSAM, "the staleness inquiry is somewhat different . . . ." *Egbert*, 61 F.4th at 401. This is "in part because the nature of the property to be seized is not consumable, like narcotics." *Id.* "[T]he consensus among courts, including [the Fourth Circuit] is that even a substantial delay between suspect online activity and the issuance of a search warrant doesn't render the underlying information stale." *Krueger*, 145 F.4th at 465 (internal quotation marks and citations omitted). "Indeed, courts evaluating warrants in such cases have sustained warrants issued many months, and even years, after the events that gave rise to probable cause." *Id.* (internal quotation marks and citation omitted).

The Fourth Circuit has identified "two primary reasons" why warrants in cases involving CSAM are sustained. *Id.* "First, there is the collector inference—the widespread view that collectors of [CSAM] value that material highly, so rarely dispose of it and instead store it for long

periods in a secure place, typically in their homes." *Id.* (internal quotation marks and citations omitted). "Second, there is the fact that digital media files persist for a long time, . . . and that even if a defendant deletes a file from a hard drive or other computer media, a computer expert is still likely to retrieve . . . [it] through scientific examination of the computer . . . ." *Id.* (internal quotation marks and citation omitted).

Gosnell focuses only on the first reason, arguing that the affidavit provided no factual basis for believing that he is a "collector" of CSAM.[10] *Krueger*, 145 F.4th at 465 (internal quotation marks and citation omitted). Gosnell suggests that there is a bright-line rule for determining whether the collector inference may be drawn. According to Gosnell, if one of the following factual showings cannot be made, "then the aforementioned inference may not be drawn": "that the suspect had paid access for child pornography; had a history of possession of such materials; was an admitted or convicted pedophile; took elaborate steps to access illegal content; or distributed such content to others." Dkt. No. 71 at 12 (citing *Bosyk*, 933 F.3d at 331). But these

---

[10] Gosnell also ignores another reason why there was sufficient probable cause for the search to be approved. The agent's affidavit provided a substantial basis to conclude not only that Gosnell committed the offenses, but also that he used electronic devices—which are instrumentalities of the offense—to do so. Gosnell overlooks that the agent sought and received permission to search Gosnell's house not only for *evidence* (such as CSAM files) but also for *instrumentalities* (such as devices he used to commit the offense). *See* Dkt. No. 71-2 at 1 (approving search for "property designed for use, intended for use, or used in committing [the] crime").

Gosnell himself provided evidence that Judge Cherry's decision to approve the search to that end was appropriate—almost immediately upon entry during the search, Gosnell pointed agents to certain electronic devices in his house that were used as instrumentalities of the offense. In other words, even if Gosnell was right, and probable cause as it relates to *evidence* was stale, the same cannot be said for *instrumentalities*. And as Judge Currie recently concluded in rejecting a similar challenge, "[e]ven if the search did not result in the location of actual CSAM material," there is "no trouble concluding the affidavit supported a fair probability that evidence of instrumentalities of a child pornography offense would be found at the Target Location." *United States v. May*, 3:25-cr-00778-CMC, ECF No. 83 at 15. Because there was also probable cause to search for instrumentalities, which Gosnell does not challenge, the motion should be denied.

are not the only circumstances under which the collector inference may be made. The Fourth Circuit in *Bosyk* listed these as examples of what could support the inference. *See Bosyk*, 933 F.3d at 331 ("Officials may support this inference with, *say,* information that the suspect paid for access to [CSAM], had a history of possessing pornographic images, was an admitted or convicted pedophile, took elaborate steps to access illegal content, or distributed content to others") (internal citation omitted). Ultimately, "like probable cause more generally, staleness is judged based on all the facts and circumstances of the case . . . ." *Bosyk*, 933 F.3d at 330 (internal quotation marks and citation omitted). Staleness is "not resolved by reference to pat formulas or simple rules." *McCall*, 740 F.2d at 1336.

Given the facts in SA Tallio's affidavit, the magistrate judge could infer that Gosnell was "a person interested in images of child pornography" and thus likely to collect CSAM. *Bosyk*, 933 F.3d at 331 (internal quotation marks and citation omitted). In his affidavit, SA Tallio described how Gosnell conducted two transactions on November 4, 2024 on PayPal with the CSAM Vendor —a convicted sex offender—for "vids" during a period when the CSAM Vendor sold CSAM to other buyers, and SA Tallio explained why there was probable cause to believe that Gosnell possessed CSAM from those transactions, although a "hold" was later placed on the transactions on December 20, 2024 and a message was exchanged on November 5, 2024 between Gosnell and the CSAM Vendor's PayPal accounts regarding "refunds." Dkt. No. 71-2, ¶¶ 10, 16, 22(a)(i). The affidavit discussed how, on the same day as those two transactions, another of Gosnell's PayPal accounts attempted to transact three times with one of the CSAM Vendor'sPayPal accounts. *Id.* at ¶¶ 22(d). This was not an isolated instance of a buyer "simply handing over money[,]" Dkt. No. 71 at 8, to a seller of CSAM "once on a single afternoon," *Krueger*, 145 F.4th at 465. Instead, according to SA Tallio's affidavit, Gosnell conducted two transactions and attempted to conduct

three more transactions with a CSAM Vendor. Dkt. No. 71-2 at 24. The affidavit also explained that individuals who access with intent to view child pornography "*almost always* possess and maintain their hard copies of child pornographic material . . . in the privacy and security of their home or some other secure location." Dkt. No. 71-2, ¶ 31(c) (emphasis added). In addition, the affidavit discussed how "[i]ndividuals who have a sexual interest in children or images of children *typically* retain their pictures, films, video tapes, photographs, magazines, negatives correspondence, mailing lists, books, tape recordings and child erotica for *many years*." *Id.* (emphasis added). Based on these facts, the magistrate judge could infer that Gosnell was more than an "inadvertent stumbler" who happened upon CSAM but rather a "person interested in images of child pornography" who was "likely to collect and retain such images for extended periods of time." *Krueger*, 145 F.4th at 465-66 (internal quotation marks and citation omitted).

Even still, "the collector inference is only one of two reasons why illicit online activity in [November 2024] . . . could still give rise to probable cause for a search [almost] eleven months later." *Krueger*, 145 F.4th at 466. As the Fourth Circuit explained in *Krueger*, "even if [a suspect] did not seek to hoard [CSAM] as a collector, and instead tried to delete that material[,] . . . it *still* could have been retrieved during an expert forensic search after [the suspect's] devices were seized eleven months later." *Id.* (emphasis in original) (internal citation omitted). SA Tallio's affidavit explained this in his affidavit, noting that "the very nature of electronic storage means that evidence of the crime is often still discoverable for extended periods of time even after the individual 'deleted' it." *Id.* at ¶ 31(e) (citing *United States v. Carroll*, 750 F.3d 700, 706 (7th Cir. 2014); *United States v. Seiver*, 692 F.3d 774 (7th Cir. 2012); *United States v. Allen*, 625 F.3d 830, 843 (5th Cir. 2010); *Richardson*, 607 F.3d at 370-71; *United States v. Lewis*, 605 F.3d 395, 402 (5th Cir. 2010)). *See also* Dkt. No. 71-2, ¶ 31(e) ("Importantly, evidence of such activity, including

20

deleted child pornography, often can be located on these individuals' computers and digital files through the use of forensic tools."). Notably, Gosnell does not address this in his motion. Based on the information in the affidavit, there was sufficient evidence for the magistrate judge to issue the search warrant in September 2025, even though the illicit activity occurred almost 11 months earlier in November 2024.

### 2. Even assuming that the warrant affidavit was deficient, the *Leon* good-faith exception applies and precludes suppression.

As discussed above, there was probable cause to support the issuance of the search warrant. But even if this Court were to conclude otherwise, the *Leon* good-faith exception applies and justifies denying Gosnell's motion to suppress.

When a defendant challenges both probable cause and the applicability of the *Leon* good-faith exception, a court may analyze the latter "without deciding[ whether] the information presented to the magistrate was insufficient to establish probable cause . . . ." *United States v. Andrews*, 577 F.3d 231, 236-37 (4th Cir. 2009), *cert. denied*, 558 U.S. 1098 (2009) (internal citation omitted). As the Supreme Court instructed in *Leon*, "a court should not suppress the fruits of a search conducted under the authority of a warrant, even a 'subsequently invalidated' warrant, unless 'a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *United States v. Bynum*, 293 F.3d 192, 195 (4th Cir. 2002) (quoting *Leon*, 468 U.S. at 922 n.23). This is because "the deterrence purpose of the exclusionary rule is not achieved through the suppression of evidence obtained by 'an officer acting with objective good faith' within the scope of a search warrant issued by a magistrate." *United States v. Perez*, 393 F.3d 457, 461 (4th Cir. 2004) (quoting *Leon*, 468 U.S. at 922). "Hence, under *Leon*'s good faith exception, evidence obtained pursuant to a search warrant issued by a neutral magistrate does

not need to be excluded if the officer's reliance on the warrant was 'objectively reasonable.'" *Perez*, 393 F.3d at 461 (quoting *Leon*, 468 U.S. at 922).

There are four circumstances where an officer's reliance on a warrant is not "objectively reasonable . . . ." *Leon*, 468 U.S. at 922. First, the good-faith exception does not apply if "the magistrate . . . was misled by information in an affidavit that the affiant knew was false or would have known was false except for his [or her] reckless disregard of the truth." *Id.* at 923 (internal citation omitted). Second, the exception does not apply if "the issuing magistrate wholly abandoned his [or her] judicial role . . . ." *Id.* (internal citation omitted). Third, the exception does not apply if "an affidavit [is] so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable . . . ." *Id.* (internal quotation marks and citation omitted). Lastly, "a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.* (internal citation omitted).

None of these circumstances are presented here. There is no dispute that the magistrate judge fulfilled her judicial role in reviewing the warrant affidavit. Nor is there a dispute that the warrant specified the place to be searched and the items to be seized. Gosnell only contends that the first and third *Leon* circumstances arise. *See* Dkt. No. 71 at 21. But, as discussed further below, Gosnell has failed to show that SA Tallio was dishonest or reckless in preparing the 36-page warrant affidavit, which provided ample probable cause to search. Since law enforcement reasonably relied on what they believed to be a valid warrant, this Court should deny the motion to suppress, even if the Court finds that the warrant lacked probable cause.

**3. Gosnell is not entitled to a *Franks* hearing.**

Gosnell asks this Court to hold "a *Franks* hearing to determine the veracity of the supporting affidavit[,]" but such a hearing would be inappropriate. Dkt. No. 71 at 1. *Franks* hearings are "the exception, not the rule." *United States v. Allen*, 631 F.3d 164, 171 (4th Cir. 2011). Normally, the defendant has no right to "challenge the veracity of a facially valid search warrant affidavit." *Allen*, 631 F.3d at 171. A *Franks* hearing allows the defendant "a narrow way to attack the validity of a search-warrant affidavit." *United States v. Haas*, 986 F.3d 467, 474 (4th Cir. 2021) (internal quotation marks and citation omitted). "Along with affirmative false statements, *Franks* protects against omissions that are designed to mislead, or that are made in reckless disregard of whether they would mislead, the magistrate." *Id.* (internal quotation marks and citation omitted).

But to obtain a *Franks* hearing, the defendant must carry a "heavy burden." *Id.* When challenging the accuracy of statements in an affidavit, the defendant must make a "substantial preliminary showing" that "(1) law enforcement made a false statement; (2) the false statement was made knowingly and intentionally, or with reckless disregard for the truth; and (3) the false statement was necessary to the finding of probable cause." *United States v. Moody*, 931 F.3d 366, 370 (4th Cir. 2019) (internal quotation marks and citation omitted). "The first required showing, of falsity, cannot be conclusory and must rest on affidavits or other evidence." *Id.* (internal citations omitted). "[T]here must be evidence showing that the statements at issue are objectively false." *Id.* As for "[t]he second showing, requiring intentional falsity or reckless disregard for the truth, [this] is just as demanding." *Id.* "[T]he defendant must provide facts—not mere conclusory allegations—indicating that the officer subjectively acted with intent to mislead, or with reckless disregard for whether the statements would mislead, the magistrate." *Id.* (internal citation

23

omitted).  "Finally, the defendant must show materiality—that is, that the false statements were necessary to the finding of probable cause."  *Id.* (internal quotation marks and citation omitted).

The defendant's burden is "even harder to meet" when he "relies on an omission."  *Haas*, 986 F.3d at 474 (internal citation omitted).  "[A]n affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation . . . ."  *Id.* at 475 (internal quotation marks and citation omitted).  To receive a *Franks* hearing, the defendant must make "a substantial preliminary showing" not only that "law enforcement made an omission" but also that "law enforcement made the omission knowingly and intentionally, or with reckless disregard for the truth . . . [and] the inclusion of the omitted evidence in the affidavit would have defeated its probable cause."  *Id.* at 474 (internal quotation marks and citation omitted).

**A.     No false statement was made in the affidavit.**

Gosnell has not met his "heavy burden" of making a "substantial preliminary showing" that law enforcement (1) made a false statement and (2) did so "knowingly and intentionally, or with reckless disregard for the truth . . . ."  *Id.* at 370 (internal quotation marks and citation omitted).  To begin, Gosnell fails at the first step.  He does not even argue that the affidavit contains any false statements.  Instead, he claims that "[t]he arrangement . . ." of certain "statements in the affidavit is so misleading as to *essentially be false*."  Dkt. No. 71 at 14 (emphasis added).  In particular, he emphasizes how the information about him in the affidavit is sandwiched between "over seven pages which detail the PayPal messages, criminal histories, identities, and interviews of . . ." other individuals and "nearly seven pages that follow . . . ."  *Id.*  Gosnell characterizes this as "a form sleight of hand . . . ."  *Id.*  However, it is not enough that Gosnell has "a purely subjective disagreement with how the affidavit characterizes the facts."  *Moody*, 931 F.3d at 370.  Gosnell

24

does not—and cannot—establish through other "affidavits or other evidence" that any statement in SA Tallio's affidavit is "objectively false." *Id.*

Even assuming that the affidavit's information regarding the PayPal messages, criminal histories, identities, and interviews of other individuals was inaccurate, Gosnell provides no evidence indicating that SA Tallio "subjectively acted with intent to mislead, or with reckless disregard for whether the statements would mislead, the magistrate." *Id.* at 371 (internal citation omitted). Gosnell contends that the affidavit's arrangement of information "overwhelmed the magistrate's ability to recognize what is actually relevant for a finding of probable cause" and "pique[d] her moral reflex, revolting her and priming her for judgment." Dkt. No. 71 at 14. Gosnell's argument that Judge Cherry was "overwhelmed" or confused by the organization of paragraphs is inappropriate and entirely without support. Judge Cherry is perfectly capable of reading an affidavit, understanding the facts, and making a reasoned probable cause determination. Gosnell's conclusory allegations to the contrary are insufficient to meet the legal standard. *See Moody*, 931 F.3d at 371; *see also Franks*, 438 U.S. at 171 ("To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine."). And Gosnell's arguments about the structure and organization of the affidavit ignore the very nature of the warrant process—"an orderly procedure under the aegis of judicial impartiality," *United States v. Jeffers*, 342 U.S. 48, 51 (1951), conducted "by neutral and detached magistrates . . . ." *Glass*, 160 F.4th at 568. Because Gosnell has failed to make a substantial showing that an objectively false statement was made, let alone made intentionally or with reckless disregard for the truth, his request for a *Franks* hearing should be denied.

B.     **No material facts were omitted from the affidavit.**

Gosnell is not entitled to a *Franks* hearing about what he purports to be "omissions of two sorts . . . ." Dkt. No. 71 at 17.  He argues that the affidavit omits information regarding "the more than one hundred individuals identified by the CyberTip who were not included in the affidavit" and "details . . . in the description of the 21 individuals who were included." Dkt. No. 71 at 17-18.  He contends that SA Tallio "intentionally and/or recklessly . . ." left this information out of the affidavit "to mislead the magistrate." *Id.* at 15.  However, there is no evidence that SA Tallio intended to mislead nor any evidence of reckless disregard.

As for the first omission, Gosnell seeks to impose an unrealistic expectation on law enforcement.  Affidavits are "normally drafted by nonlawyers in the midst and haste of a criminal investigation[,]" *Moody*, 931 F.3d at 372 (internal quotation marks and citation omitted), and affiants "cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation[,]" *Haas*, 986 F.3d at 475.  Yet that is what Gosnell is asking here.  PayPal submitted a tip that identified 171 accounts suspected of purchasing CSAM, *see* No. 71-2, ¶ 7, and Gosnell argues that the affidavit's inclusion of information about only "a subset of 21 of them" was not enough, Dkt. No. 71 at 19.  This is essentially "an argument that the warrant affidavits *lacked* probable cause, not that the omitted material was intentionally or recklessly omitted and would have *negated* probable cause." *Haas*, 986 F.3d at 475 (emphasis in original).  "But the presence (or absence) of probable cause is not the proper subject of a *Franks* hearing." *Id.*

Moreover, Gosnell fails to establish that adding the omitted information about the other suspected buyers "would have defeated its probable cause." *Id.* at 474 (internal citation omitted).  Gosnell claims that this information was not included because the other individuals "had no

26

criminal history, or any other characteristic that would lead investigators to believe that they were buying child pornography." Dkt. No. 71 at 19. But Gosnell ignores the fact that, of the 171 suspected buyers, only 79 of the accounts "listed addresses in the United States." Dkt. No. 71-2, ¶ 9. In other words, less than half of the suspected buyers had an address in the United States. Law enforcement searched its database to try to identify individuals through "name/date of birth matches to criminal history records." *Id.* The fact that the affidavit identified 12 individuals with "relevant criminal histories" and omitted information about other individuals does not defeat probable cause. *Id.* The affidavit not only provided these criminal histories but also listed two "user provided notes associated with some of the transactions[,]" two messages, the CSAM Vendor's criminal history from the United Kingdom, law enforcement's interview of another PayPal account holder who "acknowledged communicating with an individual overseas regarding CSAM and sending the person money via PayPal on one occasion[,]" and law enforcement's attempt to contact other suspected buyers. *Id.* at ¶¶ 7(a)-(b), 10, 11, 20, 22. As explained above, there was more than a substantial basis for the magistrate judge to find probable cause, and, in any event, whether there was probable cause is not the subject of a *Franks* hearing. *Haas*, 986 F.3d at 475.

Turning to the second omission, Gosnell claims that the affidavit omitted "details" in its description of the suspected buyers who were included. Dkt. No. 71 at 17-18. But "the mere fact that the agent did not include every piece of information known about [the other individuals] in the affidavit[] does not taint the[] validity." *Haas*, 986 F.3d at 475 (internal quotation marks and citation omitted). "And the mere fact that information was omitted from an affidavit cannot alone show recklessness or intentionality." *Id.* (internal citation omitted). Gosnell has failed to provide any evidence that SA Tallio intended to mislead the magistrate judge by excluding additional

27

"details" about the other suspected buyers.  Dkt. No. 71 at 17.  Therefore, Gosnell's request for a *Franks* hearing should be denied.

<h3 style="text-align:center">IV.     <u>CONCLUSION</u></h3>

For  the  above  reasons,  the  Government  respectfully  requests  that  this  Court  deny Defendant's Motion and his request for a *Franks* hearing.

Respectfully submitted,

BRYAN P. STIRLING
UNITED STATES ATTORNEY

By: *Katherine Orville*
    Katherine Orville (Fed. ID # 13332)
    Kimberly V. Hamlett (Fed. ID #14049)
    Emily Evans Limehouse (Fed. ID #12300)
    Elliott B. Daniels (Fed ID No. 101165)
    Assistant United States Attorneys
    151 Meeting Street, Suite 200
    Charleston, SC 29401
    Tel.:  (843) 727-4381
    Fax:  (843) 727-4443

February 13, 2026