IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL NUMBER: 2:25-cr-1174-RMG |
| | ) | |
| -versus- | ) | |
| | ) | |
| JAMES BENJAMIN GOSNELL, JR., | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S REPLY TO THE GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS AND REQUEST FOR A *FRANKS* HEARING**

James B. Gosnell, Jr., (hereinafter "Mr. Gosnell" or "Defendant") by and through his undersigned counsel, Lionel S. Lofton, respectfully submits this Reply to the Government's Response in Opposition to Defendant's Motion to Suppress and Request for a *Franks* Hearing. The Government's Response in Opposition fails to overcome the fact that the warrant issued to search Mr. Gosnell's residence and electronic devices located therein was: (1) unsupported by probable cause; (2) issued based on stale information/evidence and (3) supported by an affidavit that was tainted with misleading statements and material omissions of fact. Defendant respectfully requests that all evidence seized including contraband, instrumentalities, fruits of the search and any alleged incriminating statements made during the invalid search be suppressed and further requests that the Court order a *Franks* Hearing to determine the veracity of the search warrant's supporting affidavit.

1

## ARGUMENTS

I.   **The affidavit in support of the search warrant lacked probable cause.**

The Government argues that the case of *U.S. v. Bosyk*, 933 F.3d 319 (4th Cir. 2019) is "very instructive" with regard to probable cause not being a high bar. Dkt. No. 90 at 15. In *Bosyk*, "a link appeared on a secretive online message board…with a message describing its contents unmistakably as child pornography[1]…[along with] numerous thumbnail images depicting sexual molestation of a female toddler…clicking on the link took you to ... multiple videos of child pornography". *Bosyk,* 933 F.3d at 322. The *Bosyk* Court found that the magistrate had a substantial basis for finding probable cause to search Bosyk's house based on two key facts: (1) "the appearance on the [secretive online message board site] of a post unambiguously promoting a link containing child pornography videos" and (2) "an attempt to access that link on the same day by someone at Bosyk's address". *Bosyk* at 330; Dkt. No. 90 at 16. In trying to make a comparison between *Bosyk* and Mr. Gosnell's case, the Government argues that the magistrate in Mr. Gosnell's case also had a substantial basis for concluding that a search of Mr. Gosnell's residence would uncover evidence of wrongdoing because the suspected seller: (1)" 'unambiguously' promoted the sale" of child pornography on his Paypal accounts; (2) transacted with more than a dozen suspected buyers who had prior child pornography related offenses/history, and (3) Mr. "Gosnell initiated 5 separate transactions" with ▓▓▓▓ "with two being for 'vids'".[2] Dkt. No. 90 at 16.

However, the Government is straining to draw parallels between *Bosyk* and Mr. Gosnell's case because the two cases are too dissimilar to be compared.

---

[1] The word child pornography is used interchangeably with the acronym CSAM throughout this document.
[2] There were only 2 financial transactions where money was transferred. The other 3 transactions occurring within minutes on the same day were "Denied-Canceled".

First, the Government argues that ▊ unambiguously promoted the sale of child porn on his PayPal accounts. Dkt. No. 90 at 16. Obvious depictions and references to child pornography (thumbnails of a toddler being molested) displayed with a link posted on a secretive site may properly be deemed "unambiguous promotion". Private PayPal chat communications from ▊ to individual suspected buyers, which, given their private nature, Mr. Gosnell would have had no awareness of, on the other hand, may not be deemed "unambiguous promotion".

Second, the Government argues that ▊ had transactions with more than 12 individuals who had prior criminal histories for child pornography or a related offense. However, Mr. Gosnell had no criminal history, nor is there any evidence in the affidavit that Mr. Gosnell was purchasing child pornography or that he received or accessed child pornography which could be found on the electronic devices located within his residence. Moreover, there is no evidence that the 12 individuals purchased and/or received child pornography from ▊ By contrast, in *Bosyk*, there was direct evidence that the defendant accessed child pornography. Specifically, the "affidavit alleged that Bosyk's IP address accessed a URL whose content consisted of four child pornography videos." *Bosyk,* 933 F.3d at 329.

Finally, the Government argues that Mr. Gosnell conducted 5 transactions with ▊ with two being for "vids". Dkt. No. 90 at 16. Mr. Gosnell made 2 financial transactions over PayPal with ▊ after which an immediate refund was requested and processed. Dkt. No. 71-2, ¶ 22 (a), (d). The PayPal platform used by Mr. Gosnell could only be used for money transfers and there was no way of accessing or receiving any kind of content much less child pornography from that platform. In its attempt to make Mr. Gosnell's behavior look culpable, the Government seems to rely heavily on the transaction note, "vids," associated with these two financial transactions, somehow equating them with "PayPal Chat" communications from ▊ not

3

directed to Mr. Gosnell. Specifically, the Government after describing the transaction note, says that ▇ had "likewise" sent a message to another PayPal account about "vids," "specifically 'vids…' of 'dads [and] boys…' and 'Matt Estes' style videos." Dkt. No. 90 at 14. Simply put, "vids" is a common abbreviation of, and reference to, video. "Vids… of dads [and] boys," and "Matt Estes" style vids, can be construed as indicative of child pornography. To conclude these communications are at all equivalent is nonsensical. Further, to equate these communications, and thereby impute an obvious criminal intent to Mr. Gosnell is not only unreasonable, but a demonstration of bad faith.

Therefore, if *Bosyk* sets the probable cause bar, as argued by the Government, then probable cause clearly has not been met in Mr. Gosnell's case, and the search warrant is invalid. Unlike *Bosyk*, where there is direct evidence linking Bosyk's residence with having accessed child pornography, there are no such facts present in Mr. Gosnell's case. Moreover, in *Bosyk* the evidence was overwhelming that he sought out child pornography because thumbnails depicting a toddler being molested were displayed with the link, which he then made a conscious decision to click, taking him directly to child pornography videos. Bosyk's click on the URL address was captured and directly linked Mr. Boysk's residence and his electronic devices to child pornography. In comparison, there is no evidence or inferences that can be drawn that link Mr. Gosnell, his residence or the electronics devices located therein to accessing child pornography. There is no evidence or information that: Mr. Gosnell attempted or purchased child pornography; received or accessed child pornography; or that evidence of such would likely be found on any devices within his residence. A refunded financial transaction with ▇ without a lot more does not reach the probable cause bar set by the *Bosyk* Court and as such, the magistrate did not have a

substantial basis to find probable cause to believe that evidence of wrong-doing would be found at Mr. Gosnell's residence including located on the electronic devices therein.

While it is true that a prima facia showing or concrete evidence of a crime is not needed to establish probable cause, in regard to the digital age and specifically to search warrants in alleged child pornography cases, there is a reason why there are no appellate decisions that are analogous/comparable to the facts before this Court. As previously stated in the Motion to Suppress, Defense Counsel is not aware of any case with facts analogous to the case at bar where the court found probable cause to search a residence and the devices therein for child pornography. Moreover, there is nothing novel presented in this case that would preclude case law from already existing. If Courts were to allow search warrants to be issued under these specific circumstances it would open the door to unrestrained government intrusion whenever an individual had a single financial transaction with any other individual who had a criminal history.

Remember Mr. Gosnell had no other transactions with ▓▓▓▓ had no other relationship with any other suspected buyer; had no prior criminal history; and had never been the target of a search warrant for alleged child pornography or accused of any inappropriate behavior with any child. There is nothing to suggest that Mr. Gosnell ever received child pornography so that it or evidence of child pornography would be found on any electronic devices within his residence. As previously addressed in the motion to suppress, Counsel has not found any Fourth Circuit case where there was not some direct evidence that the defendant had child pornography in the place to be search or had accessed child pornography in the place to be searched. While probable cause may not require a prima facie showing of criminal activity, it clearly requires more than what is presented in this case.

Because the warrant was issued in contravention of the Fourth Amendment, without any indicia of probable cause to support the search and seizure conducted at Mr. Gosnell's residence including the search and seizure of all items located therein, all evidence and items seized, and fruits thereof, including any allegedly incriminating statements made during the invalid search must be suppressed.

## II. The information in the affidavit was stale.

The Government argues the *Bosyk* factors—the five listed supports for the collector inference—are not intended as a bright line rule. Dkt. No. 90, 19-21. Regardless, these "supports" are included together for a reason. Clearly, they share certain commonalities, and, as "thresholds," are treated as equivalent. It would be instructive to analyze these factors, to distill them in order to establish what is essential to their function in this analysis.

Preliminarily, as the Court says, these "supports" demonstrate that the defendant deliberately sought out CSAM. *Bosyk*, 933 F.3d at 331. However, in these investigations, the presence of a "support" serves a more fundamental purpose: not only do they confirm the defendant's interest in CSAM, but those of the second "type" (see below) are indicative of the defendant's *actually "handling"* CSAM. More particularly, these supports can be divided into two categories, essentially involving either reference to the defendant's past as corroboration of his interest in CSAM (being an admitted/convicted pedophile, or history of CSAM possession), or the defendant's crossing thresholds explicitly marked by depiction, or description of, or reference to CSAM (payment for access to CSAM, elaborate steps, or distribution).

With regard to the supports that reference the defendant's past, their function is obvious: if the defendant is an admitted, or convicted pedophile, or has a history of CSAM possession, there

is no question that the collector analysis may be applied to him. As for the "threshold" support, in all of these cases, one is confronted at every point with markers the nature of which, as in the case of bright flashing lights, or sirens, is unmistakable, explicitly spelling out, by word or depiction, that one is approaching forbidden materials. That the defendant would persist in the face of such markers indicates that he was acting with intention. Even more importantly, the markers themselves are so explicit as to serve as transparent "proof" to authorities that one is dealing with CSAM, and not any other kind of material.

As the Government contends, this list of supports may not have been intended as exhaustive. And here, *Bosyk* is, indeed, instructive. While it did not find the facts to fit into one of these five supports—despite their matching up closely with those of the "elaborate steps" support—the Court believed the affidavit still contained sufficient information showing the defendant was interested in CSAM. *Bosyk*, 933 F.3d at 331. What is revealing is that even *Bosyk*— which the Government contends would demonstrate the list of five supports is not exclusive—if it were taken to represent a sixth support, would simply stand as one more of the "threshold" type. Its function is the same: given that every step along the defendant's way was explicitly marked as leading to CSAM, there was little question that he was interested in this material, actively seeking it out—and, for that reason, could be classified as a collector.

In the present case, there are neither past behaviors, nor explicit thresholds, evincing the interest in CSAM required to draw this inference. The Government says the magistrate could infer from the facts of Mr. Gosnell's transactions alone that he was interested in CSAM. Dkt. No. 90 at 20. But if one compares these facts to those of the above-described supports, it is clear they are extremely threadbare. First, Mr. Gosnell had no history evincing an interest in CSAM; if he had, the affiant would have said so. Second, his "present" behavior involved no such threshold crossing

7

either: neither the creating of a PayPal account, nor sending money over PayPal are marked so explicitly as pertaining to CSAM as one sees in the rest of the case law; in fact, navigating PayPal involves no description, depiction, or even reference to such materials at all.

Because the present facts do not permit the inference that Mr. Gosnell was interested in CSAM, he cannot be categorized as a collector. Thus, the collector inference cannot be applied in this case. Therefore, a more "standard" staleness timescale must apply, under which the passage of eleven months—in which authorities apparently took no investigatory steps regarding Mr. Gosnell himself—is simply too much time for what little information there was to not have "gone stale."

As for the other staleness consideration, the persistence of digital media was not addressed for good reason. The problem with the Government applying it here is that it depends on *an entirely conclusory assertion*. For the persistence of digital media to be relevant, there must first be some indication that the Defendant actually received or accessed it. The facts render it obviously inapplicable in two respects. First, it cannot be shown that Mr. Gosnell was buying CSAM, as there is no direct evidence to show what was changing hands. As for the note "vids," the notion that it is somehow equivalent to explicit requests for CSAM is preposterous. Second, the transactions were either refunded or cancelled. Thus, every available fact would indicate to a reasonable mind that Mr. Gosnell received nothing from ▓▓▓▓

The Government further contends that such refunds are quite common in these situations—that buyers often request refunds, knowing, given the nature of the goods, that the seller would have no recourse. However, as stated above, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Compare this with his communication with Mr. Gosnell, which was perfectly civil. The only reasonable interpretation of this behavior

would be that Mr. Gosnell did not receive anything. And if Gosnell cannot be shown to have attempted to access CSAM, nor to have received it, then this second staleness consideration cannot be applied to this case. Thus, again, a more standard staleness timescale would apply.

### III. The Leon good-faith exception doesn't apply and suppression is appropriate.

The Government relies on *U.S. v. Leon*, 468 U.S. 897 (1984) to argue that the officers acted in good faith and to propose that if the Court is confronted with both probable cause and the good faith exception that the Court may analyze the applicability of the good faith exception without deciding whether probable cause existed. While true, the Supreme Court in *Leon* stated that "[i]f the resolution of a particular Fourth Amendment question is necessary to guide future action by law enforcement officers and magistrates, nothing will prevent reviewing courts from deciding that question before turning to the good faith issue" [because] "…frequently it will be difficult to determine whether the officers acted reasonably without resolving the Fourth Amendment issue". *Leon* at 925.

Mr. Gosnell argues that the *Leon* good faith exception would not apply in this case because the search warrant was (1) not supported by any indicia of probable cause to search Mr. Gosnell's residence and the items therein for child pornography and/or evidence of child pornography and (2) was issued in violation of *Franks v. Delaware,* 438 U.S. 154 (1978). When a search warrant is so devoid of probable cause to believe that child pornography will be found in Mr. Gosnell's residence including on the electronic devices therein, no reasonable officer can objectively rely on it. See *U.S. v. Doyle*, 650 F.3d 460, 467, 472 (4th Cir. 2011) (scant evidence in an affidavit did not support belief that defendant possessed child pornography). Furthermore, if a warrant is issued in bad faith and as such "violates *Franks* it is not subject to the good faith exception." *U.S. v. Somerlock*, 602 F.Supp.3d 791(D. Md., 2022); See *U.S. v. Doyle*, 650 F.3d 460, 467 (4th Cir. 2011).

For the reasons set forth above and in the Defendant's Motion to Suppress, the good faith exception should not apply and all evidence and items seized, and any alleged incriminating statements made during the invalid search should be suppressed.

### IV. Mr. Gosnell is entitled to a *Franks* hearing.

#### A. Misleading Statements, like False Statements, are recognized as triggering a *Franks* Hearing.

In summarizing the law on *Franks* hearings, the Government cites cases which state that such hearings are limited to affidavits marred by false statements, or misleading omissions. They have left out a body of case law pertaining to the granting of *Franks* hearings when an affidavit contains misleading information. *See U.S. v. Falso*, 544 F.3d 110 (2nd Cir. 2008); *Wilkes v. Young,* 28 F.3d 1362 (4th Cir. 1994); *U.S. v. Daniels,* 906 F.3d 637 (7th Cir. 2018); *U.S. v. Perkins,* 850 F.3d 1109 (9th Cir. 2017); *U.S. v. Barsoum,* 736 F.3d 1321 (11th Cir. 2014). Since the Government does not actually address Defendant's argument regarding misleading information, Defendant will refer the Court to his Motion to Suppress.

#### B. Affiant omitted material information that, if included, would defeat probable cause.

First, the Government appears to agree that there was an omission: by only including information pertaining to 21 suspected PayPal account holders, the affiant necessarily left out the facts regarding the vast majority of total suspects. To include only those suspects that bolstered his case, and omit the rest, is to mislead by omission. Contrary to the Government's assertion, our argument is not that these omissions cause the affidavit to lack probable cause, but rather that the inclusion of the omitted information would defeat probable cause.

This is a circumstantial case. Because the affiant cannot show that illicit material actually changed hands, the affiant had to make the connections among the circumstances in this case so

10

suggestive that it was reasonable to conclude that evidence of a crime would be found at Mr. Gosnell's residence. The essential circumstances as presented by the affiant are as follows: first, ▆▆ sold CSAM; second, people transacted with ▆▆ for *something* over PayPal; and third, some of these people could be shown to have an interest in CSAM.

If after proposing that ▆▆ sold CSAM, and received money from the suspected buyer accounts, it were possible for the affiant to show that all of these suspected buyers had a demonstrable interest in CSAM, this would establish an *absolute correlation* between transacting with ▆▆ and having such an interest. In other words, he would have presented as strong a circumstantial case, in the present context, as there could be: that, given this absolute correlation, there would be a substantial basis to conclude that anyone who transacted with ▆▆ like Mr. Gosnell, did so because they were interested in, and wanted to buy, CSAM.

This is exactly what the affiant did: by including only those suspects who had either a criminal history he deemed relevant, or flagged communications explicitly referencing this illicit material, or some other indicator, the affiant presented to the magistrate circumstances that, taken together, would indicate that such an absolute correlation did actually exist. The problem is that, to do so, the affiant had to manipulate the information presented in the affidavit to create the *appearance* of this correlation.

In Statistics or Data Analysis, one manipulates the appearance of correlation by limiting the range of "data points," or only analyzing a subset of those data points, or excluding data points that would undermine the trend one wishes to establish. Here, all this amounts to the same thing: limiting the analysis to those suspects with a demonstrable interest in CSAM and omitting all those who do not evince having any such interest and, as a result, undermine this apparent correlation. To do so is obviously misleading.

The Court can better understand the significance of the affiant's framing, and this correlation, by observing how it would function when taken to either extreme. The "affirmative" extreme has already been presented: if every single "relevant" suspect can be shown to be interested in CSAM, the affiant has created the appearance of an absolute correlation, and a compelling circumstantial case. At the other extreme, if the affiant was unable to present *any suspect* as having a demonstrable interest in CSAM, then he could propose no correlation between transacting with ▉▉▉ and having such an interest, and a very unconvincing case. For, as any reasonable person would agree, simply transacting with someone engaged in a criminal enterprise does not give rise to probable cause to search one's residence; at most, it is merely suspicious.

Here, the relevant number is not those suspects presented in the affidavit (21), but all of the suspects (79)[3], because, in order to establish a correlation, or relationship between two variables—in this case, transacting with ▉▉▉ and having a demonstrable interest in CSAM— one must include all relevant data points, i.e., all of the available suspects. If all the relevant data points had been included, the affiant could have only shown that about 25% of suspects had a demonstrable interest in CSAM. Obviously, this constitutes a much weaker circumstantial case, much closer to the "negative" extreme of there being no suspects with a demonstrable interest in CSAM. More importantly, the fact that approximately 75% of suspects have no demonstrable interest in CSAM would *actually establish the opposite correlation*; that is, transacting with ▉▉▉ is highly correlated with having no such interest. If the magistrate had been presented with an affidavit that included all relevant information, could have seen that transacting with ▉▉▉ was

---

[3] The Government seems to insist that we use 79 as opposed to 171 because only these 79 were US citizens despite the fact that they include among the 21 suspected buyers in the affidavit individuals that were not US citizens. For the sake of this argument, we use the 79.

actually highly correlated with having no demonstrable interest in CSAM. That would have undermined the correlation and therefore negated probable cause.

The Government argues that there was no evidence presented that the affiant intended to mislead the magistrate. Dkt. No. 90 at 26. First, as previously stated in Defendant's Motion to Suppress, the affiant took the totality of relevant facts and curated a selection to present to the magistrate. And, according to the Fourth Circuit, "selectively includ[ing] information bolstering probable cause, while omitting information that did not . . . can mislead a magistrate by reporting less than the total story, thereby manipulating the inferences a magistrate will draw." *Miller v. Prince George's Cty., MD*, 475 F.3d 621, 629 (4th Cir. 2007).

With respect to the affiant's intent, *U.S. v. Tate* is instructive. In his affidavit, the officer omitted the fact of the location of the trash bags he seized—that is, that he had to trespass in order to take the bags—a fact established by plaintiff through affidavits, etc., that would have negated probable cause. *U.S. v. Tate*, 524 F.3d 449 (4th Cir. 2008). There was obviously no direct evidence presented that the affiant intended to mislead the magistrate; instead, the Court took it for granted that the facts of that case, when taken together, were sufficient to indicate the officer omitted this fact knowingly or intentionally, or with reckless disregard for the truth.

If it was enough to put the above facts together to conclude that the affiant had the requisite intent, it is difficult to see why one could not reach the same conclusion here. In the present case the affiant selectively included *some* relevant information, and omitted the rest, which happened not to bolster his case. That is a fact. And it did not happen by chance. It is crucial to note that this is not a fact of merely omitting information from an affidavit, which, as the Fourth Circuit has stated, is not enough to show recklessness or intentionality, but rather a pattern that *could only have resulted* from an intentional act. *U.S. v. Shorter*, 328 F.3d 167, 171 (4th Cir. 2003). While it

13

is *possible* that he did not have an intent to mislead the magistrate, there is only one *reasonable conclusion*: he presented those 21 suspects, and omitted the others, intending to create the aforementioned appearance of absolute correlation, upon which his entire affidavit relied.

As for reckless disregard, according to the Fourth Circuit, an officer so acts when he "fails to inform the magistrate of facts [he] subjectively knew would negate probable cause." *Miller v. Prince George's Cnty.*, 475 F.3d 621, 627 (4th Cir. 2007). Again, the affiant *had* to present, at minimum, a compelling correlation between transacting with ▇ and having a demonstrable interest in CSAM; otherwise, the circumstances would be too "diffuse," and would fail to add up to probable cause. And the way the affidavit was written reflects that he knew that. By including only those suspects that would establish his correlation, he necessarily left out all those suspects who would weaken it. In other words, he failed to inform the magistrate of facts—those which established the vast majority of U.S. suspects had no demonstrable interest—because he knew that their inclusion would negate probable cause. Therefore, it is evident that the affiant misled the magistrate by omission either intentionally, or with reckless disregard and Defendant is entitled to a *Franks* Hearing.

## **CONCLUSION**

For the reasons stated above and in Defendant's Motion to Suppress and Request for a *Franks* Hearing, Defendant respectfully requests that this Court grant the Defendant's motion because it was (1) unsupported by probable cause; (2) issued based on stale information/evidence and (3) supported by an affidavit that was tainted with misleading statements and material omissions of fact. Furthermore, because the affidavit in support of the search warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," *U.S. v. Leon*, 468 U.S. 897, 932 (1984), and because the affiant intentionally and/or

14

recklessly misled the magistrate with material omissions, the good faith exception does not apply. As a result, all evidence including contraband, instrumentalities, fruits of the search and any alleged incriminating statements made during or as a result of the illegal search of Mr. Gosnell's residence and the electronic devices and other items located therein should be suppressed. Further, Defendant respectfully requests that the Court order a *Franks* Hearing.

                                        Respectfully submitted,

                                        LOFTON & LOFTON, P.C.

BY:    s/Lionel S. Lofton
          LIONEL S. LOFTON, #2711
          V. LYNN LOFTON, #8059
          CHRISTIAN C. LOFTON, #107340
          225 Seven Farms Drive, Suite 109
          Charleston, SC 29492
          (843) 722-6319 Office
          (843) 722-6372 Facsimile
          Lofton@loftonandlofton.com

          ATTORNEYS FOR DEFENDANT

Charleston, South Carolina

March 6, 2026